## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KACIE K. CURRIE, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  07-1256-MLB |
| | ) | |
| CITY OF EL DORADO and SERGEANT | ) | |
| LARRY ARNOLD in both his official | ) | |
| capacity and individual capacity, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

This matter comes before the court on defendants' partial motion for summary judgment. (Docs. 33, 34).   Defendants are City of El Dorado, Kansas ("City") and Sergeant Larry Arnold ("Arnold"). Plaintiff Kacie Currie opposes the motion and the matter has been fully briefed. (Doc. 35).   The motion is GRANTED for the reasons stated more fully herein.

This case involves an excessive use of force action brought under 42 U.S.C. § 1983 against Arnold filed on August 31, 2007.[1]  Currie is also claiming negligent training and intentional infliction of emotional distress, which are the relevant claims for City and Arnold's Motion for Partial Summary Judgment.   Initially, Currie sought punitive damages against City, but has since abandoned this claim in her response to City and Arnold's motion for partial summary judgement.  (Doc. 35 at 2).

**1.     SUMMARY JUDGMENT STANDARD**

---

[1]The case was removed from Butler County, Kansas, District Court.

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## II.  FACTS AND PROCEDURAL HISTORY

The following facts are either uncontroverted or, if controverted, taken in the light most favorable, along with all favorable inferences, to plaintiff. See Hall v. United Parcel Serv., No. Civ. A. 992467-CM, 2000 WL 1114841, at *5 (D. Kan. July 31, 2000) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)). To the extent relevant, the factual disagreements between the parties will be noted.

Arnold has been employed with the El Dorado, Kansas, Police

Department since 1987. Arnold was initially certified as a law
enforcement officer after completing the requisite training and number
of hours mandated by the Kansas Law Enforcement Training Center
("KLETC"). Arnold has continued to receive at least 40 hours of
annual training to maintain his KLETC certification plus additional
training in "use of force" techniques and other police procedures.
On November 8, 1996, Arnold received eight hours of training in the
Chris Lein Arm Management Program ("CLAMP") where he learned a self-
defense technique known as the CLAMP. The KLETC sponsored this
program even though it was held in El Dorado, Kansas.

Arnold was working on August 22, 2006 at approximately 1:07 a.m.
when he responded to an  apartment about a complaint of loud music and
under-age drinking. Arnold was accompanied by El Dorado police
officer Seth Miner. Arnold and Miner peered in the front window and
saw several people inside and a few individuals leaving through the
back door. Arnold went to the front door while Miner went around back
to talk with those individuals. Before Arnold could knock, a female
who identified herself as Kacie Currie, opened the door. Currie
apologized for the loud music and explained that she was watching the
tenant's, Margo Stevens, child while Stevens slept. Arnold noted that
Currie's breath smelled strongly of intoxicants, she had slurred
speech, and was leaning up against the wall for support. Arnold asked
Currie to go get Stevens so he could talk with her and issue her a
citation.

When Stevens came downstairs, Arnold took her out onto the front
porch. Arnold explained to Stevens he was going to issue her a
citation for disorderly conduct because of the loud music. Stevens,

who Arnold also believed to be intoxicated, became upset because she
already owed money on several tickets.

At this time, Arnold realized he did not have an Adult
Disposition Sheet with him.  Arnold told Stevens he needed her to go
with him to Police Headquarters to complete the proper paperwork.
Stevens refused to leave the apartment because she had a child
upstairs asleep.  Arnold and Stevens re-entered the apartment to see
if Miner had a form.  Stevens, however, tried to go back upstairs.
Arnold told Stevens that she could not go upstairs because they still
needed to finish the paperwork.  Stevens became irate and stated she
was not leaving with him and was going back upstairs.  Arnold told
Stevens again that she could not go upstairs and Stevens refused to
cooperate.  Arnold then told Stevens she could be arrested if she
refused to cooperate. Currie walked back inside the apartment and
asked Stevens what was going on.  Stevens was upset and yelling that
she was going to jail.  Currie told Arnold that she was responsible
for the loud music, not Stevens.

At this point, the following facts are controverted.  According
to Arnold, Currie placed herself in between Stevens and Arnold on the
stairs.  Currie told Arnold on two occasions that she was not going
to let Stevens go.  Arnold warned Currie to move out of the way or she
would go to jail.  Currie shoved herself in the way as Arnold was
trying to grab Stevens.  Arnold grabbed Currie by the left wrist and
told her she was under arrest for obstruction.  Currie then tried to
move away.  Arnold took her left arm, performed the CLAMP technique,
and was in the process of taking Currie to the ground when he heard
a snap and felt her upper arm become loose.  Arnold realized that

-4-

Currie's arm was broken and he told her to lie still while he sought help.

Currie, on the other hand, claims that Arnold caused a fracture to her arm when Arnold purposely punched the back of her upper arm. This occurred while Arnold was twisting Currie's arm behind her back during her arrest. Currie screamed out in pain and yelled, "you broke my arm!" (Doc. 35 at 3). Currie claims that Arnold did not immediately go for help, but paced the room in circles. Currie's fiancé came into the room and told Arnold, "you broke my wife's arm! Get out of here!" (Doc. 35 at 3). Arnold then called an ambulance and left the room.

Butler County EMS arrived on the scene and took Currie to the hospital. In their report, EMS workers noted that Currie smelled of alcohol and that Currie had stated she had six vodka drinks that night. Currie, however, said she did not have six separate drinks, but six sips of one drink made with vodka.

Since this incident, Currie claims that she is depressed, which is the source of her emotional distress. Yet, Currie testified in her deposition that she has previously suffered from depression as a young teen and took medication for her depression. Currie did not seek psychological counseling or use any prescription medication after the incident to help her depression. According to City and Arnold, Currie's failure to seek counseling indicates her depression is not severe.

Initially, Currie was unable to go to work. Currie's doctor has since released her, but Currie chose not to work because she was pregnant at that time and subsequently took care of her new baby.

Currie is planning on returning to work and stated her only limitation is her arm.

**III.   ANALYSIS**

**A. Negligent Training**

Currie's claim of negligent training is against City.  City asserts two theories why summary judgement is appropriate on Currie's negligent training claim: 1) City did not owe Currie a duty to reasonably train its employees and there is no causal connection between the alleged excessive force used by Arnold and any negligent training City could be liable for; and 2) pursuant to K.S.A. § 75-6104(e)and (n) of the Kansas Tort Claims Act ("KTCA"), City is not liable for its discretionary acts or police protection functions. (Doc. 34 at 10).  Currie failed to properly address City's arguments with applicable law or produce any evidence why summary judgment on her claim of negligent training is not appropriate.[2]  (Doc. 35 at 7). Indeed, the court can find nothing in the record to indicate that Currie has conducted any discovery relating to her negligent training claim.

For negligence to exist, the defendant must owe a duty to an individual, there must be a breach of that duty, and a causal connection to the injuries sustained. <u>Schmidt v. HTG, Inc.</u>, 265 Kan. 372, 382, 961 P.2d 677, 684 (1998). Moreover, in a negligent training claim, a plaintiff must show "some causal relationship between the

---

[2]Currie asserts in her brief that the negligent training claim is pursuant to 42 U.S.C. § 1983. (Doc. 35 at 7).  These contentions were not raised in the pretrial order.  D. Kan. R. 16.2(c) clearly states that the pretrial order controls the subsequent course of the action.  Currie has waived these contentions by her failure to include them in the pretrial order. (Doc. 26 at 7).

dangerous propensity or quality of the employee, of which the employer has or should have knowledge, and the injuries suffered by the third person; the employer must, by virtue of knowledge of his employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of the continued employment of that employee; and the harm which results must be within the risk created by the known propensity for the employer to be liable." Id. at 694.

Currie makes a conclusory allegation that Arnold's alleged use of excessive force is a product of City's negligent training. Currie has not asserted that City knew or had reason to believe Arnold had a propensity to use excessive force. The state of Kansas, with its Kansas law enforcement training act, is responsible for the training and certification of law enforcement personnel. K.S.A. § 74-5601 et seq. An appointed commission oversees the requirements and methods used in training county and municipal police officers as well as certifying these officers. K.S.A. §§ 74-5607(e), 5607a(a). City was not responsible for the training Arnold received and there is no evidence to suggest City knew Arnold, who continuously met the KLETC requirements, was likely to use unreasonable excessive force. Therefore, Currie has not met her burden.

Regardless, even if Currie could establish City was negligent in properly training Arnold, City would be immune from liability. See Jarboe v. Bd. of County Com'rs of Sedgwick County, 262 Kan. 615, 631, 938 P.2d 1293, 1305 (1997) (stating even if defendants were negligent, they would still be immune under the discretionary function exception to KTCA). KTCA provides that municipalities are immune from liability

-7-

from damages when performing discretionary and police protection functions. <u>Holmes v. Dailey</u>, No. 97-2418-JWL, 1998 WL 709621, at *7 (D. Kan. Aug. 14, 1998) (citing <u>Allen v. Bd. of Comm'rs of County of Wyandotte</u>, 773 F. Supp. 1442, 1453-54 (D. Kan. 1991)). A governmental entity is not liable for the damages caused when an employee performs or fails to perform a discretionary duty within his or her scope of employment. <u>Allen</u>, 773 F. Supp. at 1453-54. Although immunity is not absolute, it remains even if "the discretion is abused and regardless of the level of discretion involved." <u>Id.</u>; K.S.A. § 75-6104(e). The defendant bears the burden of establishing the discretionary function exception. <u>Allen</u>, 773 F. Supp. at 1454.

Typically, law enforcement officers owe a duty to the general public and not to individuals. <u>Woodruff v. City of Ottawa</u>, 263 Kan. 557, 563-64, 951 P.2d 953, 958 (1997). Thus, absent statutory rules to the contrary, any services provided by police officers are discretionary. <u>Id.</u> Discretion is defined as the ability "to act unhampered by legal rule[]" as well as determine which direction is reasonable based upon the surrounding circumstances. <u>Id.</u> "In determining whether a government employee performed a discretionary function, the court must focus on the 'nature and quality' of the discretion rather than the status of the employee exercising that discretion." <u>Id.</u> (citing <u>Robertson v. City of Topeka, Kan.</u>, 231 Kan. 358, 362, 644 P.2d 458, 462 (1982)). Absent a specific policy or statute, law enforcement has discretion over its day-to-day activities. <u>Patrick v. City of Overland Park, Kan.</u>, 937 F. Supp. 1491, 1502 (D. Kan. 1996).

Here, City had discretion over what qualifications and additional

-8-

training, if any, were required of its already KLETC certified
officers. City established a police department policy that authorizes
law enforcement to use non-deadly force techniques in situations where
it is necessary to protect the officers' safety, restrain a resistant
individual, or bring an unlawful situation under control. El Dorado
Police Department Policy § 555.00 et seq. City's policy gives police
officers discretion to assess whether non-deadly force is appropriate.
Id. As a result, Arnold retained discretion over whether or not to
arrest Currie and any reasonable means necessary to effectuate that
arrest. Soto v. City of Bonner Springs, 38 Kan. App. 2d 382, 386, 166
P.3d 1056, 1060 (Kan. Ct. App. 2007). Therefore, City is immune from
liability for any alleged negligent training of Arnold because any
other training or policies were discretionary once the mandatory
requirements of the KLETA were met. Id.; K.S.A. §§ 74-5607(e),
5607a(a).

Additionally, "[s]ubsection (n) of K.S.A. 75-6104 provides that
governmental entities and employees acting within the scope of their
employment shall not be liable for the 'failure to provide, or the
method of providing, police ... protection.'" Allen, 773 F. Supp. at
1455. A governmental entity provides police protection when it trains
and supervises law enforcement. Holmes, 1998 WL 709621 at *7 (citing
Allen, 773 F. Supp. at 1455-56). Furthermore, a police officer is
performing a police protection function when he or she takes a suspect
into custody. See id. (noting "the Sheriff's Department was providing
'police protection' by taking [the defendant] into its custody.").

Currie's claim against City for negligent training of Arnold
falls within the police function exception to the KTCA. Id. Arnold

arrested Currie while responding to a complaint of loud music and under age drinking.  City supervised Arnold while he was providing police protection within his scope of employment.  Therefore, Currie's claim against City for negligent training must fail because of the police function exception to KTLC.  <u>Id</u>.

The court grants City's motion for summary judgment on Currie's negligent training claim because Currie has not established the elements for negligence.  In addition, City would be immune from liability for damages pursuant to the discretionary and police protection exceptions to the KTLC.

**B. Intentional Infliction of Emotional Distress**

Currie's claim of intentional infliction of emotional distress, known as tort of outrage, is against both City and Arnold.  City and Arnold move for summary judgment claiming Currie did not show sufficient evidence that she sustained severe emotional distress to satisfy the second threshold requirement for tort of outrage.

"Kansas has set a very high standard for ... the tort of outrage." <u>Kelly v. Bank Midwest, N.A.</u>, 161 F. Supp. 2d 1248, 1260 (D. Kan. 2001).  For a plaintiff to be successful on a tort of outrage claim, the court must first find that two threshold requirements are met.  "First, the defendant's conduct must be 'so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.'  Second, the emotional distress suffered by the plaintiff must be 'of such extreme degree the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it.'" <u>Ely v. Hitchcock</u>, 30 Kan. App. 2d

1276, 1288, 58 P.3d 116, 125 (Kan. Ct. App. 2002) (quoting <u>Miller v.</u>
<u>Sloan, Listrom, Eisenbarth, Sloan & Glassman</u>, 267 Kan. 245, 257, 978
P.2d 922 (1999)).  If the plaintiff meets the threshold requirements,
then he or she must further show: "'1) [t]he conduct of the defendant
was intentional or in reckless disregard of the plaintiff; (2) the
conduct was extreme and outrageous; (3) there was a causal connection
between the defendant's conduct and the plaintiff's mental distress;
and (4) the plaintiff's mental distress was extreme and severe.'"  <u>Id.</u>
at 124-5.  "It is for the court to determine whether on the evidence
severe emotional distress can be found; it is for the jury to
determine whether, on the evidence, it has in fact existed." <u>Kincaid</u>
<u>v. Sturdevant</u>, 437 F. Supp. 2d 1219, 1228 (D. Kan. 2006) (quoting
<u>Taiwo v. Vu</u>, 249 Kan. 585, 594, 822 P.2d 1024 (1991)).

For the purpose of their motion for summary judgment, taking into
account that factual findings are made in favor of Currie as the
nonmoving party, City and Arnold concede it is "perhaps *possible*" that
Arnold's alleged conduct of punching Currie in the arm is outrageous
conduct sufficient to meet the first threshold requirement.  City and
Arnold do claim, however, that Currie did not establish her depression
is distress "so severe that no reasonable person could be expected to
endure it."  (Doc. 34 at 17).

"Emotional distress passes under various names such as mental
suffering, mental anguish, nervous shock, and includes all highly
unpleasant mental reactions such as frights, horror, grief, shame,
embarrassment, anger, chagrin, disappointment, and worry." <u>Beyers v.</u>
<u>State</u>, No. 99C 1804, 2001 WL 34117816, at *7 (Kan. D. Ct. June 20,
2001) (citing <u>Roberts v. Saylor</u>, 230 Kan. 289, 293-94, 637 P.2d 1175

-11-

(1981)).  Still, generic claims of being upset and depressed at times do not qualify as severe emotional distress.  See id. ("It is only when emotional distress is extreme that possible liability arises.").  Kansas courts may consider whether the plaintiff has sought medical or psychological treatment as well as the ability to function normally in plaintiff's everyday life.  See Robinson v. Bd. of County Com'rs of Rush County, No. 93,992, 2007 WL 518829, at *9 (Kan. Ct. App. Feb. 16, 2007) (granting defendant's motion for summary judgment because although the defendant claimed he suffered from depression, medical treatment did not appear to be necessary and defendant was able to function normally).

Currie stated in her deposition that she was upset and depressed at times following the incident.  Currie also admitted that she had suffered from depression previously in her early teens and taken medication for depression.  Currie claims she purposely avoided seeking counseling because she did not want to be put on medication again.  Nevertheless, Currie admits that her depression "has been off and on usually, [that she will] see how much this has changed [her] life, but so far [she has] been living with it." (Doc. 35-2 at 86).  Currie thus has failed to show any evidence of severe emotional distress and acknowledges that her depression is not continuous or unbearable.  See, e.g., Caplinger v. Carter, 9 Kan. App. 2d 287, 292, 676 P.2d 1300, 1305 (Kan. Ct. App. 1984) (granting motion for summary judgment because plaintiffs had not sought medical treatment, nor presented expert testimony on their alleged emotional distress and at most suffered from hurt feelings and resentment).

Additionally, Currie has not shown any evidence that she cannot

function normally in her daily activities as a result of this incident. Currie was released by her doctor to go back to work, but chose not to because she was pregnant at that time and later stayed home with her child. Currently, Currie is planning on going back to work and stated her only limitation may be the use of her arm. Therefore, Currie has not produced sufficient evidence to meet the second threshold requirement and the court grants City and Arnold's motion for summary judgment on Currie's intentional infliction of emotional distress claim.

**IV. CONCLUSION**

City and Arnold's motion for partial summary judgment (Doc. 33) is GRANTED for the reasons stated more fully herein. The clerk is directed to enter judgment for defendants pursuant to Rule 54(b). The court expressly determines that there is no just reason for delay should plaintiff seek to appeal from this order.

IT IS SO ORDERED.

Dated this   20th   day of August 2008, at Wichita, Kansas.


                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE